# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| TIME CRITICAL SOLUTIONS, LLC, | |
| Plaintiff, | MEMORANDUM DECISION & ORDER |
| vs. | |
| ACOMM, INC., ET AL., | Case No. 2:07CV957DAK |
| Defendants. | |

This matter is before the court on Defendant AComm, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Renewed Motion to Dismiss for Lack of Personal Jurisdiction, Defendant Fredric J. Harris's Motion to Dismiss for Lack of Personal Jurisdiction, and Plaintiff's Motion for Preliminary Discovery Re Jurisdictional Issues Raised by Defendants' Motions to Dismiss for Lack of Personal Jurisdiction. The court held a hearing on the motions on May 28, 2008. At the hearing, Plaintiff was represented by Sterling A. Brennan and David Griffin, and Defendants Acomm and Harris were represented by Bradley L. Tilt and Sara E. Bouley. The court took the matter under advisement. The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, as well as the law and facts relating to the motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Defendants Harris and AComm both move to dismiss Plaintiff's Complaint on the grounds that this court lacks personal jurisdiction over them. "The allegations in the [Plaintiff's] complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). If there is conflicting evidence, the court is to "resolve all factual disputes in favor of the plaintiff in determining whether plaintiff has made a prima facie showing that establishes jurisdiction." *Far West Capital v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995).

Defendant Harris is a resident of California, and Defendant AComm is a Delaware corporation with its principal place of business in San Diego, California. Plaintiff Time Critical Solutions ("TCS") is a Utah limited liability corporation with its headquarters in Orem, Utah.

The present case is a diversity action alleging state and common law claims for breach of contract, unjust enrichment/quantum meruit, fraud or deceit, self-dealing and breach of fiduciary duty, civil conspiracy, and unlawful interference with prospective economic advantage. Plaintiff has also named three other individual defendants– Benjamin Egg, John Walsh, and Thomas Millard–all of whom are residents of California. These three other Defendants have answered the Complaint and submitted to the jurisdiction of this court.

Since September 1967, Defendant Harris has been employed full-time as a faculty member in the Electrical Engineering Department of San Diego State University. The Complaint alleges that Defendant Egg and Harris developed technology known as Miniaturized Common Data Link ("MCDL"), which is useful to radio communication units in the United States Navy.

Defendants Egg, Harris, and Walsh solicited a Utah-based investment company,

Mantford Ventures, LLC, for funding with respect to this developing radio technology. Walsh represented to Mantford that if it were to provide funding and create and entity for the marketing and sale of MCDL technology, then upon the formation of that entity, the entity would receive an initial contract from Northrup Grumman for the purchase of MCDL product, a contract from the United States Navy, and future more lucrative contracts with the United States Navy.

Based on these representations, Plaintiff TCS was formed to be the entity for marketing and selling MCDL technology. Mantford, Egg, Walsh, and Millard were all members of TCS. On January 12, 2007, Harris visited Utah for a meeting at Mantford Ventures's corporate headquarters. Harris states that the purpose of the meeting dealt with doing due diligence on another company. Plaintiff, however, alleges that only two hours were spent reviewing the other company and the majority, and main purpose, of the meeting was to discuss TCS. TCS was trying to recruit an individual to join TCS at the specific request of Harris and others. Several of the members of Mantford, TCS, and Harris, all took the individual to lunch to discuss potential TCS contracts. Plaintiff also claims that the parties spent about thirty minutes in the Mantford boardroom discussing TCS objectives.

Egg, Millard, and Walsh–the three Defendants who have submitted to this court's jurisdiction–all entered into written employment agreements with TCS. Plaintiff alleges that although Harris refused to enter into a written employment contract like some of the other Defendants, he agreed, on February 23, 2007, in a meeting at the University of San Diego with one of Mantford's principals, to act in the capacity of a consultant and TCS's chief scientist in exchange for an ownership interest in TCS. Harris was listed in TCS materials as the company's Chief Scientist.

TCS began marketing MCDL technology to the military and military contractors. But TCS's Complaint alleges that after the formation of TCS, Egg, Walsh, Millard, and Harris began making unreasonable and unnecessary demands of TCS management, including the acquisition of beach front office space in Southern California, and the hiring of certain individuals, regardless of the terms requested by those individuals.

In March of 2007, Northrup Grumman informed Defendants that it intended to employ TCS's services to support Northrup Grumman's MILES program. Without authorization or knowledge of TCS, on March 21, 2007, Egg began circulating a prospectus to potential investors claiming that Mantford's interest in TCS was being purchased. Plaintiff alleges that Harris assisted and had knowledge of Egg's solicitation of funding in Utah.

On April 12, 2007, without the authorization of TCS, Egg and Harris sent a communication on TCS letterhead indicating that because of structural and management issues with TCS and Mantford, "we are hereby severing our relationship with Mantford Ventures." The letter requested that Mantford enter into negotiations regarding new terms between Mantford and TCS for a fair and reasonable return on investment.

Mantford indicated that it did not want to sell its interest in TCS. Harris, Egg, Walsh, Millard, and others formerly affiliated with TCS, left their employment with TCS and formed a new entity, AComm. These individuals took the intellectual property from TCS to AComm, and AComm began marketing MECDL products in direct competition with TCS. AComm also sought to obtain the potential contracts that were used to obtain Mantford's investments in the technology. AComm also sent communications to potential third-party investors.

Moreover, Plaintiff alleges that the co-Defendants's creation of AComm was for the purpose of avoiding TCS's financial obligations to Mantford, and that by creating AComm, the co-Defendants unlawfully conspired to retain the benefit of monies invested in TCS while avoiding TCS's liabilities to TCS's investors. As a result of this conspiracy, TCS alleges that it was damaged in Utah because it was deprived of its competitive advantage, its intellectual property, and its ability to receive potential contracts.

## DISCUSSION

### Defendants' Motions to Dismiss

Defendants[1] filed separate motions to dismiss for lack of personal jurisdiction, but the law and facts of each motion overlap significantly. The court will, therefore, address the motions jointly. Plaintiff does not contend that either Defendant is subject to general jurisdiction in Utah. The issue before the court, therefore, is whether each of the Defendants is subject to specific personal jurisdiction in the State of Utah.

There is a three-part inquiry to invoke specific jurisdiction. *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999). First, Utah's long-arm statute must permit the exercise of personal jurisdiction. Second, there must be a "nexus" between Plaintiffs' claims and Defendants' acts or contacts. Third, the application of Utah's long-arm statute must satisfy the requirements of federal due process–i.e., the exercise of personal jurisdiction over Defendants must not offend traditional notions of fair play and substantial justice.

---

[1] The court's use of the term Defendants in this Order is intended to apply only to Defendant Fredric Harris and Defendant AComm, Inc., as they are the only Defendants with motions pending before the court.

5

Utah's long-arm statute states that any person submits himself to the jurisdiction of Utah courts as to "any claim arising from . . . the transaction of any business within this state; . . . [or] the causing of any injury within this state whether tortious or by breach of warranty." Utah Code Ann. § 78-27-24. The statute broadly defines "transaction of business" to mean "activities of a non-resident . . in this state which affects persons or business within the State of Utah." *Id.* § 78-27-23(2).

Because the Utah Long-Arm Statute extends to the extent consistent with due process, the inquiry is whether Defendants have the requisite minimum contacts with Utah specifically related to this case for this court to exercise jurisdiction. Defendants must have purposefully directed their activities at residents of Utah, and the litigation must have resulted from alleged injuries arising out of or relating to those activities.

**A. Defendant Harris**

Harris argues that Plaintiff has failed to allege and cannot allege that he solicited or conducted business in Utah. Rather, Harris claims that TCS is relying on Harris's efforts at soliciting and conducting business in California to claim that Harris was connected to Utah. TCS argues that Defendant Harris willingly entered into an agreement with a Utah-based company from which he received direct and substantial benefit. TCS also claims that Harris caused injury in Utah by tortious conduct and a breach of contract when he conspired to form a competing entity that took away TCS's business and potential to obtain contracts.

In *Patriot Systems, Inc. v. C-Cube Corp.*, 21 F.2d 1318, 1321 (D. Utah 1998), this court rejected the argument that financial injury to a plaintiff resulting from conduct occurring outside of Utah could be a basis for exercising specific jurisdiction over a defendant. But this case

6

significantly differs from *Patriot Systems* because it is not focused solely on financial injury in the state.  In this case, Plaintiff alleges that Harris had personal contacts within the State of Utah.  Plaintiff came to at least one meeting in Utah with respect to the formation and business strategy of TCS.  And, according to Plaintiff, Harris entered into a verbal agreement to work as TCS's Chief Scientist.  Documents submitted by Plaintiff support this allegation.  Plaintiff was also authorized to use TCS letterhead as was demonstrated in his letter severing TCS's relationship with Mantford.

The court concludes that Harris's contacts with the State of Utah are sufficient to meet due process standards.  Given his employment and relationship with TCS, a Utah company, he should have anticipated that he may be haled into court in this state.  Harris's course of dealing with Mantford and TCS in Utah directly resulted in TCS's tort and contract claims.  The court, therefore, finds that the nexus requirement has been met.  *Soma Medical Intern.*, 196 F.3d at 1298.

Harris argues that even if his activities were sufficient minimum contacts with Utah, due process concerns and considerations of fairness preclude the exercise of jurisdiction over him in this case because the quantity and quality of his contacts are insufficient.  Harris is a long-time resident of California and is employed full-time in California.  Nevertheless, he also entered into an employment relationship with a Utah company.  This conduct constitutes a deliberate act to engage in activities in the State of Utah from which he profited.  Harris played an affirmative part in creating and maintaining continuous obligations between himself and TCS, a Utah entity.  Accordingly to the allegations in the Complaint, Harris also should have known that his acts in taking the intellectual property from TCS and forming AComm would result in harm to TCS in

the State of Utah. Harris also fails to provide any support for his allegation that all of the evidence of the alleged wrong would be in California. Moreover, Utah has an interest in providing TCS with a forum to redress its injuries caused by an out-of-state actor and Utah law would be applicable to the dispute. The evidence further demonstrates that Harris engaged in activities with respect to the allegations in the Complaint that spanned the entire country. As such, traveling to Utah or communicating with counsel in Utah would not appear to cause him any real hardship. Accordingly, the court finds that the exercise of jurisdiction over Harris in the case comports with due process.

### B. Defendant AComm

AComm asserts that TCS has failed to allege even one contact that AComm has with Utah. TCS, however, alleges that the Defendants in this case were engaged in a conspiracy with individuals who are subject to jurisdiction in this State. Both Harris and AComm argue that there can be no jurisdiction in this court based on the alleged conspiracy between the parties.[2]

Defendants contend that for purposes of personal jurisdiction, it is improper to impute the actions of Egg, Walsh, and Millard to AComm as an alleged co-conspirator. But "[t]he existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction." *Melea Ltd. v. Jawer Sa*, 511 F.3d 1060, 1069 (10th Cir. 2007).

In *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343 (2d Cir. 1972),

---

[2] Although Harris is alleged to be a member of the conspiracy, and such membership may be a basis for exercising jurisdiction over Harris, the court did not believe that the conspiracy issue was necessary to address given the court's determination that Harris's own contacts provided the requisite minimum contacts with the forum.

the Second Circuit recognized that "the rule in this circuit is that the mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator." The court stated that a partnership relation alone would not justify a conclusion that one partner's acts should be attributed to another partner for purposes of personal jurisdiction. *Id.* The court reasoned that the matter could be viewed differently when the relationship was closer, such as between a senior partner and a younger partner to whom he has delegated work and over whom he retains general supervision. *Id.* Because there were issues of fact with respect to the individual's contacts, however, the Second Circuit decided that jurisdictional interrogatories should have been answered prior to the district court's decision. *Id.*

The Tenth Circuit recognized the rule that most courts follow: "In order for personal jurisdiction based on a conspiracy theory to exists, the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Id.* A civil conspiracy claim requires a plaintiff to establish "concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of a common design, intention, or purpose of the alleged conspirators." *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69 ¶ 35 (Utah 2002).

TCS argues that its Complaint adequately alleges facts establishing a prima facie case of conspiracy against Harris. Defendants, however, assert that TCS has failed to allege facts to support a prima facie showing that there was a meeting of the minds on any alleged unlawful object to be accomplished. Defendants contend that, at most, TCS states only that the alleged conspirators sought to exclude TCS from obtaining potential contracts and directly competed with TCS.

TCS alleges that the individual defendants conspired, planned, and cooperated in the act of creating AComm for the purposes of (a) avoiding the financial obligations of TCS to Mantford, (b) avoiding distribution of the fruits of the potential contracts to other persons or entities having an ownership interest in TCS, and (c) increasing their personal share of the revenues to be generated under the potential contracts. In furtherance of the conspiracy, TCS alleges that the co-conspirators, for the benefit of themselves and AComm: (a) sent unauthorized communications to Mantford in Utah on behalf of TCS demanding renegotiation of terms; (b) simultaneously terminated their employment and/or affiliations with TCS in an effort to harm TCS; (c) transferred intellectual property from TCS without authorization; (d) sought investment funding for AComm while consultants or under the employ of TCS; (e) represented to potential investors of TCS that persons not employed with TCS were actually employed or affiliated with TCS; (f) sent false investment information to potential investors in Utah without the authorization or knowledge of TCS; (g) collaborated and assisted each other in the violation and breach of their respective Employment Agreements and/or covenants of confidentiality; (h) disclosed confidential and proprietary information to AComm and other third parties without the authorization of TCS; and (i) made false representations to the United States Department of Defense and its subsidiary units and officials. The co-conspirators engaged in many of these actions in order to obtain the potential contracts that had been used to obtain Mantford's investment.

At the motion to dismiss stage, the court concludes that the facts alleged by TCS consist of more than a bare allegation of conspiracy. The facts specifically allege that the Defendants acted together with a common design, intention, or purpose.

Although Defendant AComm does not appear to have any direct contacts within the State of Utah, court have repeatedly held that "'the acts of corporate agents may be imputed to their principal corporation in order to establish personal jurisdiction over the principal.'" *Frees, Inc. v. McMillian*, 2007 U.S. Dist. LEXIS 66814, at * 9 (W. D. La. Sept. 7, 2007) (quoting 36 C.J.S. Federal Courts § 31 (June 2007)). Accordingly, this court can exercise personal jurisdiction over AComm based on the activities of its agents in the State of Utah.

In a recent case in the District of Kansas, *Guang Dong Light Headgear Factory Co. v. ACI International, Inc.*, 2007 U.S. Dist. LEXIS 33497 (D. Kan. May 4, 2007), an employer sued a former employee for creating a new company to directly compete with plaintiff's Kansas-based company. *Id.* at *3-4. Although the defendant's business was incorporated in Texas, the plaintiff alleged jurisdiction in Kansas based on theories of tortious injury and civil conspiracy. *Id.* In denying the defendant's motion to dismiss for lack of personal jurisdiction, the court held that even though the corporation itself did not act in the State of Kansas, the corporation was created for the express purpose of competing with the plaintiff's business and, therefore, the corporation reasonably should have foreseen that it would be required to defend itself in a Kansas court. *Id.* at 13-17. The court found that the claims arose from the activities of the defendant's agents and attributed those activities to the corporation. *Id.*

Like the defendant corporation in *Guang Dong,* TCS alleges that AComm was created to deprive TCS of their competitive advantage and to avoid TCS's financial obligation to Mantford. Additionally, TCS alleges that its injuries partially arose from AComm's agents within the State of Utah. Based on the reasoning used by the *Guang Dong* court, the court finds it appropriate to exercise personal jurisdiction over AComm pursuant to TCS's conspiracy claim. The court finds

that the exercise of personal jurisdiction over AComm would not offend traditional notions of fair play and substantial justice.

## CONCLUSION

For the reasons stated above, Defendant AComm, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Renewed Motion to Dismiss for Lack of Personal Jurisdiction is DENIED, Defendant Fredric J. Harris's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED, and Plaintiff's Motion for Preliminary Discovery Re Jurisdictional Issues Raised by Defendants' Motions to Dismiss for Lack of Personal Jurisdiction is MOOT.

DATED this 22nd day of July, 2008.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge